Okey, J.
Adolph, William B. and Henry M. Landaner, partners as A. Landauer & Sons, dealers in ready made *169 clothing at Columbus, Ohio, executed to Mark Bloomingdale, on December 5, 1878, a note for $8,000, due at one day, together with a warrant of attorney authorizing a judgment to be confessed thereon. On December 17, 1878, judgment was rendered in the court of common pleas of Franklin county, on the note and warrant, in favor of Bloomingdale, for $3,005.80, and costs, on which judgment he caused an execution to issue on December 18, 1878, directed to the sheriff of Franklin county, which execution the sheriff, on the same day, at ten o’clock in the forenoon, levied on all the goods and chattels of the defendants in execution subject to levy. And this was the first levy upon the property.
S. Stein & Co. had a valid account against A. Landauer & Sons, amounting to $1,492.02, for goods sold in August, Sep tember and October, 1878. On January 14,1879, while the property so levied on still remained in the hands of the sheriff, said S. Stein & Co. commenced an action in the court of common pleas of Franklin county, against Landauer & Sons and others, under the act of 1878 (75 Ohio L. 938, § 10), charging that the note, warrant of attorney, judgment and levy were within-that section, which provides that “ all transfers, conveyances, or assignments made with intent to hinder, delay or defraud creditors, shall be declared void at the suit of any creditor.” The object of the suit was to secure the appointment of a trustee and the subjection of such property so levied on, to the payment of debts, in accordance with that section. The plaintiffs gave notice of their suit, as required by the section, but no creditor gave bond,- or deposited money, as also-therein required.
The district court, to which the cause was taken by. appeal, found, among other things, that the note, warrant of'attorney, judgment, execution and levy, in favor of Bloomingdale, were fraudulent; that the Landauers were not indebted to him; that the object of the Landauers, -who were insolvent, was to cheat and defraud their creditors, in which object Bloomingdale concurred, and the acts named, and each of them, was done in furtherance of that purpose; that the acts named •brought the case within the above mentioned section; that the *170 sheriff having sold the goods, by consent of all parties in interest, and having in his hands $7,817.74, the same should be distributed as follows : first, in payment of the costs, including a fee to the counsel of S. Stein & Oo. ; secondly, the claim of S. Stein & Co. in full; thirdly, to the remaining creditors pro rata, the balance, after paying the claim of S. Stein & Co., being insufficient to pay the other creditors in full.
A petition in error has been filed in this court by Bloomingdale to reverse the judgment, and certain creditors hereinafter mentioned, have filed cross-petitions in error, with the same object in view. The questions thus presented we will now consider. 1. It is said, the evidence did not warrant the finding that the note and warrant given to Bloomingdale were without consideration, and that the object in the various steps, resulting in the seizure of the goods by the sheriff, was to defraud the creditors of A. Landauer & Son. But on careful examination of the testimony, we feel that we would not be warranted in disturbing the findings, in view of the rule stated in McGatrick v. Wason, 4 Ohio St. 566; 35 Ohio St. 7; 37 Ohio St. 260.
2. It is objected that S. Stein & Co. were not judgment creditors. But in Combs v. Watson, 32 Ohio St. 228, the rule was settled that it was not necessary that the claim of a creditor should be reduced to judgment, in order to maintain such action. The same question was fully discussed, in the courts below and in this court, and decided the same way, in the Shonfeld case, which was finally reported, on other questions, sub nom. Hellebush v. Richter, 37 Ohio St. 222.
3. It is insisted that the acts, beginning with the execution of the note and warrant of attorney, and culminating in the seizure of the property on execution in favor of Bloomingdale, were not a transfer, conveyance or assignment of the property, within the meaning of the above mentioned section 10, even if the purpose was to defraud creditors, and hence that S. Stein & Oo. could not maintain such suit, even if the second objection, above stated, is not well taken. And this question is the only one which called for a report of the case.
The commissioners to revise the statutes found the follow *171 ing to be the principal statutes relating to fraudulent conveyances and conveyances in trust. S. & C. 606, 712; S. & S. 397. They thought best, however, not to codify those provisions, but leave to the courts the question whether the earlier provisions had been modified by the subsequent statutes, and if so the extent of such modification ; and hence, little more was done than to transfer the sections from the places they then occupied in the statutes into appropriate places in Rev. Stats. §§ 4195, 4196, 6343, 6344. With the provisions in that form, the legislature adopted the revision, after changing section 6344, so as to embrace fraudulent purchases in the name of another ; and, aside from such change, the provisions should undoubtedly be construed as before revision.
Combs v. Watson, 32 Ohio St. 228, and Shorten v. Woodrow, 34 Ohio St. 645, are in apparent conflict upon the question whether fraudulent purchases in the name of another were within the provision here under consideration. That they were not was decided in the latter case, and that decision is supported by some cases where the question arose in actions at law, and the court adhered to the mere letter of the statute. In the former case the question, though directly presented by the record, is not discussed, but as a decision supporting the view that such a case is in effect provided for, it is not only entirely in harmony with the decisions of courts of equity, but is even supported by many cases at law. Taylor v. Heriot, 4 Des. Eq. 227, 234; Whittlesey v. McMahon, 10 Conn. 138; Botsford v. Beers, 11 Conn. 370; Doyle v. Sleeper, 1 Dana, 531; Alston v. Rowles, 13 Fla. 117; Kimmel v. McRight, 2 Barr, 38; Miller v. Wilson, 15 Ohio, 108; Bump Fraud, Con. (2 ed.) 518; Wait’s Fraud. Con. §§ 57, 243; 1 Am. Lead. Cas. (5th ed.) 50. Doubtless because of this conflict, the legislature changed section 6344, as already stated, so as to be in this respect in harmony with the view constantly adopted in courts of equity, though, of course, this case is governed by the statute as it existed in 1878. We have no hesitancy, however, in saying that we would not be warranted, in this case, in placing any strict construction upon this remedial statutory provision. , On the contrary, where a debtor, *172 having the title and possession of property, passes the possession and apparent ownership to another, with the intent upon the part of both to defraud the creditors of such debtor, the transaction is within the provision we are considering, and it is wholly immaterial what device is resorted to for the purpose of consummating the fraud. The law regards the thing which the debtor has done, rather than the means by which he accomplished it; for if he has placed his property in the hands of another to defraud his, the debtor’s creditors, the creditor is equally injured whether the transfer was effected by a formal instrument of writing, by means of a fraudulent execution, or by some other device; and equity, in either case,looking through the form to the substance of the transaction, will not hesitate to grant relief, in accordance with the evident object and purpose of the statute. Booth v. Bunce, 33 N. Y. 139; Bump Fraud. Con. (2 ed.) 250. And this view is greatly strengthened by the fact that the statute affords protection to all creditors, and tends to discourage preferences, on the just principle that “ equity delights in equality.”
4. Bloomingdale’s judgment was, as already stated, rendered on December 17, 1878, and his levy was made December 18, 1878, at 10 o’clock A. M. On the last named day Loeb obtained by confession of the Landauers, two judgments against them, one for $345.69, and the other for $1,566.25 On the same day, Frank Bros. & Co. obtained by confession o the Landauers, a judgment against them for $667.75. The judgments of Loeb and Frank Bros. & Co. were for bona fide debts, which had remained unpaid for several months. On the afternoon of December 18, 1878, the sheriff levied executions issued on those judgments upon the same property which he held on the execution of Bloomingdale, levied at ten o’clock in the morning of the same day.
If S. Stein & Oo. had not commenced their action, Loeb and Frank Bros. & Co. might have treated the Bloomingdale levy as a nullity and obtained satisfaction of their judgments by a sale of the property on their executions. Clark v. Hubbard, 8 Ohio, 382; Westerman v. Westerman, 25 Ohio St. 500. But when S. Stein & Co. commenced their suit, and the court *173 acquired jurisdiction of the subject matter and the parties, it was no longer possible for Loeb and Frank Eros. & Co. to proceed legally witli their execution. On the contrary, while the sheriff is not ordinarily to be regarded as agent of either party to an execution (Cooley on Torts, .129), the acts of the Landauers and Bloomingdale, culminating in the seizure of the goods on December 18,1878, at 10 o’clock A. M. on execution, operated, on the election of a creditor to prosecute such suit, as a transfer of the goods to defraud creditors, at that hour, within the section under consideration (Conrad v. Pancost, 11 Ohio St. 885; and see Jamison v. McNally, 21 Ohio St. 295); and hence, the subsequent levies of Loeb and Frank Bros. & Co. became and were properly held to be mere nullities. The fact that Loeb and Frank Bros. & Co. were not originally parties to the suit is of no importance. They filed answers and cross-petitions. The district court also properly held that the money in the hands of the sheriff should be applied, first, to the payment of costs, including counsel fees; secondly, to the payment of the claim of Stein & Co., with interest; and lastly, that the balance should be distributed to the remaining creditors pro raia.

Judgment affirmed.